UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF WISCONSIN

CHS Capital, LLC

    Plaintiff,

              Civil Action No. 18-CV-806

v.

Hellenbrand Farms, LLC and
Scott Hellenbrand

    Defendants.

## COMPLAINT

CHS Capital, LLC ("CHS"), by and for its Complaint against Defendants Hellenbrand Farms, LLC, ("Hellenbrand Farms") and Scott Hellenbrand ("Scott") states and alleges as follows:

### PARTIES

1.

CHS is a limited liability company, organized and existing under the laws of the State of Minnesota, with its principal place of business at 5500 Cenex Drive, Inver Grove Heights, Dakota County, Minnesota.

2.

Hellenbrand is a limited liability company, organized and existing under the laws of the State of Wisconsin, with its principal place of business at 5240 Church Road, Middleton, Dane County, Wisconsin.

3.

Scott Hellenbrand is an individual, residing at 5666 Highway 12, Waunakee, Dane County, Wisconsin.

## JURISDICTION

4.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Venue is proper in this judicial district under 28 U.S.C. §1391 because Defendants live in this district, a substantial part of the events or omissions giving rise to the claim occurred in this district, and a substantial part of the property that is the subject of the action is situated in this district.

5.

This Court has Jurisdiction over Defendants.

## FACTS

6.

Hellenbrand claims it performed threshing, husking or bailing work for True Blue Registered Holsteins Partnership ("True Blue") from May 14, 2017 to September 11, 2017. Attached hereto as **Exhibit A** is a true and correct copy of Hellenbrand's invoice to True Blue.

7.

On or about December 26, 2017, Hellenbrand allegedly filed a Lien for Threshing, Husking, or Bailing with the Circuit Court of Iowa County, Wisconsin, allegedly creating a lien on real estate owned by Gerald L. Ihm and Lorraine Ihm Irrevocable Trust property, identified as Parcel No. 004-0520 in the original amount of $143,573.90 ("Threshing Lien").  Attached hereto as **Exhibit B** is a true and correct copy of the Threshing Lien Filing.

8.

Hellebrand did not foreclose upon its alleged lien at any time prior to March 11, 2018.

9.

Gerald Ihm, Kevin Ihm (collectively "Ihm") and True Blue executed and delivered to CHS a Promissory Note dated June 21, 2016, in the original principal amount of $540,200.00; a Promissory Note dated June 21, 2016 in the original principal amount of $1,200,200.00 and a Promissory Note dated April 5, 2017 in the original principal amount of $1,200,400.00 (collectively, the "Notes"). Attached here as **Exhibit C** are true and correct copies of the Notes. True Blue defaulted on said Notes.

10.

Ihm's and True Blue's obligations under the Notes are secured by an Agricultural Security Agreement dated June 21, 2016 ("2016 Security Agreement"), in the original principal amount of $1,740,400.00 in the following:

> All of the following whether now owned or hereafter acquired; all products and proceeds thereof, all additions or accessions thereto, and all substitutions and replacements thereof: All crops growing, grown, or to be grown, or to be grown in 2016 and subsequent years. All harvested crops. All warehouse receipts or other documents (negotiable or non-negotiable) issued for storage of such crops. All seed, fertilizer, chemicals and petroleum, and any other crop input products. All inventory, contract rights, chattel paper, documents, instruments, supporting obligations, accounts, general intangibles, and cash and noncash proceeds from the sale, exchange, collection, or disposition of any of the Collateral. All entitlements and payments, whether in cash or in kind, including but not limited to agricultural subsidy, deficiency, diversion, conservation, disaster, contract reserve, under any government or any similar or other programs. All livestock, including cattle, now existing or hereafter born, all increase, issue offspring, products and produce from the Livestock; replacements and substitutes with respect to the Livestock; all cash and noncash proceeds of the Livestock, including but not limited to money, accounts, contract rights, benefits payable under insurance policies, and any other rights to payment. All farm and business machinery, equipment and tools.

> All existing and future security agreements from all or any of the Borrowers (and from third parties if so intended) to the Lender. All of the covenants and agreements contained in said security instruments are made a part of this Agreement.

Ihm's and True Blue's obligations under the Notes are also secured by an Agricultural Security Agreement dated April 5, 2017 ("2017 Security Agreement"), in the original principal amount of $1,200,400.00 in the following:

> All of the following whether now owned or hereafter acquired; all products and proceeds thereof, all additions or accessions thereto, and all substitutions and replacements thereof: All crops growing, grown, or to be grown, or to be grown in 2017 and subsequent years. All harvested crops. All warehouse receipts or other documents (negotiable or non-negotiable) issued for storage of such crops. All seed, fertilizer, chemicals and petroleum, and any other crop input products. All inventory, contract rights, chattel paper, documents, instruments, supporting obligations, accounts, general intangibles, and cash and noncash proceeds from the sale, exchange, collection, or disposition of any of the Collateral. All entitlements and payments, whether in cash or in kind, including but not limited to agricultural subsidy, deficiency, diversion, conservation, disaster, contract reserve, under any government or any similar or other programs. All livestock, including cattle, now existing or hereafter born, all increase, issue offspring, products and produce from the Livestock; replacements and substitutes with respect to the Livestock; all cash and noncash proceeds of the Livestock, including but not limited to money, accounts, contract rights, benefits payable under insurance policies, and any other rights to payment. All farm and business machinery, equipment and tools.

> All existing and future security agreements from all or any of the Borrowers (and from third parties if so intended) to the Lender. All of the covenants and agreements contained in said security instruments are made a part of this Agreement.

(collectively referred to as the "Collateral"). The 2016 and 2017 Security Agreements secures all of the Indebtedness due and owing to CHS by Ihm and True Blue. Attached hereto as **Exhibit D** is a true and correct copy of the 2016 and 2017 Security Agreements.

11.

CHS duly perfected its security interest in the Collateral by the filing of a UCC-1 Financing Statement with the Wisconsin Department of Financial Institutions on May 13, 2014, as filing number 140006255624 (the "UCC"). Attached hereto as **Exhibit E** is a true and correct copy of the UCC.

12.

On or about February 20, 2018, corn silage, haylage and big square bales were sold at auction by Hennessey Auction Company, for the amount of $256,778.82. A check was payable in the amount of $256,778.82 to CHS, Hellenbrand and Peoples Community Bank (the "check"). Attached hereto as **Exhibit F** is a true and correct copy of the Check.

13.

Peoples Community Bank endorsed the check and turned it over to CHS.

14.

Ihm's and True Blue's obligations under the Notes were also secured by Mortgages granted in favor of CHS, dated June 21, 2016 and recorded June 22, 2016 in the Iowa County Register of Deeds as Document Nos. 347143 and 347144, in the original principal amounts of $1,200,200.00 and $540,200.00, respectively (the "Mortgages") A true and correct copy of the Mortgages are attached hereto as **Exhibit G**.

15.

Ihm and True Blue coordinated the sale of real estate secured by the Mortgages to satisfy their debts, including their obligations under the Notes. One of the parcels to be sold by auction, with the proceeds to go to CHS in satisfaction of the Notes and Mortgages, was legally described as:

The Southwest Quarter (S.W. 1/4) of the Southeast Quarter (S.E. 1/4) of Section Seventeen (17); The Southwest Quarter (S.W. ¼) of Section Sixteen (16); The Northwest Quarter (N.W. ¼) of the Northwest Quarter (N.W. ¼) of Section Twenty-one (21); And the East Half (E. ½) of the Southeast Quarter (S.E. ¼) and the Northwest Quarter (N.W. ¼) of the Southeast Quarter (S.E. ¼) of Section Seventeen (17), all in Township Six (6) North, Range Five (5) East, Town of Brigham, Iowa County, Wisconsin;

EXCEPT a parcel of land 7 rods East and West by 9 rods North and South in the Southwest corner of the Northwest Quarter (N.W. ¼) of the Southeast Quarter (S.E. ¼) of said Section Seventeen (17);

EXCEPT that part conveyed to Charles M. Schlimgen and Linda F. Ballweg Schlimgen recorded in Volume 444 of Records, page 367, described as a parcel of land located in the Northwest Quarter (N.W. ¼) of the Southeast Quarter (S.E. ¼) of said Section Seventeen (17), described as commencing at the South Quarter (S. 1/4) corner of said Section Seventeen (17); thence North 0°03'31" W, 1630.02 feet to the point of beginning; thence continuing North 0°03'31" West, 959.34 feet; thence North 90°00'00" East, 600.00 feet; thence South 00°00'00" West, 959.34 feet; thence South 90°00'00" West, 599.02 feet to the point of beginning;

EXCEPT that part conveyed to Lawrence D. Hathaway and Rhonda K. Hathaway in Volume 437 of Records, page 379, described as that part of the Northeast 1/4 of the Southeast 1/4 of said Section 17 and that part of the Southwest Quarter (S.W. ¼) of said Section Sixteen (16) lying Easterly of the following described reference line, to-wit: Commencing at the West Quarter (W. 1/4) corner of said Section Sixteen (16), thence South 89°58'12" East 211.02 feet to point of beginning of said reference line, thence South 48°24'27" East 298.52 feet, thence South 0°55'51" West 500.77 feet, thence South 76°42'53" West 424.51 feet, thence North 84°20'10" West 422.73 feet, thence South 15°26'15" West 76.74 feet, thence South 54°54'15" East 839.14 feet, thence South 14°04'24" East 405.65 feet, thence South 25°27'24" East 275.68 feet, thence South 38°59'48" East 549.33 feet, thence South 24°24'45" East 273.70 feet, thence North 89°43'40" East 234.43 feet, thence North 0°11'26" East 66.00 feet, thence North 89°58'34" East 185.47 feet, thence South 89°51'08" East 282.61 feet, thence South 35°59'39" East 69.20 feet, thence South 53°36'23" East 17.11 feet, thence South 45 feet, more or less, to a point on the South line of the Southwest Quarter (S.W. 1/4) of said Section Sixteen (16) and point of termination of said reference line.

EXCEPT a parcel of land in the Southeast corner of the Southwest Quarter (S.W. ¼) of said Section Sixteen (16), lying South and East of Langberry Road;

EXCEPT that part conveyed to Thomas F. Wiegel and Kay L. Wiegel in Volume 479 of Records, page 192, described as a parcel of land located in part of the SE 1/4 of the SE 1/4 of Section 17, the Southwest Quarter (S.W. ¼) of the Southwest

6

Quarter (S.W. ¼) of Section Sixteen (16), and the Northwest Quarter (N.W. ¼) of the Northwest Quarter (N.W. ¼) of Section Twenty-One (21) all in T6N, R5E, Town of Brigham, Iowa County, Wisconsin, to-wit: Commencing at the SE corner of said Section 17; said point being the point of beginning; thence North 89°54'55" West, 1314.01 feet; thence North 0°06'44" East, 886.55 feet; thence South 56°43'38" East, 877.22 feet; thence South 64°49'38" East, 519.34 feet; thence South 39°19'17" East, 172.86 feet; thence North 0°03'24" East, 11.67 feet; thence South 89°56'36" East, 66.00 feet; thence South 0°03'24" West, 133.12 feet; thence South 25°34'54" East, 225.04 feet; thence South 49°59'11" East, 658.73 feet; thence South 46°03'44" East, 890.76 feet; thence South 89°45'03" West, 1318.18 feet; thence North 0°22'05" East, 1319.28 feet to the point of beginning.

TAX ROLL PARCEL NUMBERS: 250040693, 250040694, 250040694.A, 250040695.A, 250040713, 250040714, 250040716, 250040716.A, 250040717 and 250040773

(the "Real Property").

16.

Ihm's and True Blue's obligations under the Notes were further secured by an Assignment of Rents relating to the Real Property as included in the Mortgage. A Notice of Default was filed and recorded with the Iowa County Register of Deeds on March 22, 2018, as Document No. 355879. Attached hereto as **Exhibit H** is a true and correct copy of the Notice of Default.

17.

The Peoples Community Bank and the United States of America, acting through the Farm Service Agency, United States Department of Agriculture had first and second lien positions against the Real Property. CHS was in third lien position and is senior in interest to all other creditors with respect to the Real Property, and all remaining proceeds from the sale of the Real Property was to be applied to Ihm's and True Blue's outstanding debts under the Notes.

18.

In cooperation with CHS, Ihm auctioned the Real Property on or about April 20, 2018.

19.

Scott was the high bidder for the Real Property, bidding a total purchase price of $922,609.63. Pursuant to the Auction Terms and Conditions, Scott was obligated to pay earnest money in the amount of $92,260.97 (the "Earnest Money"). A true and correct copy of the Earnest Money Receipt and Purchase Agreement, with the Auction Terms and Conditions, is attached hereto as **Exhibit I.**

20.

The sale was subject to confirmation, and no other contingencies. The Real Property was sold AS IS WHERE IS. The sale was confirmed. Upon payment of the Earnest Money and execution of the Earnest Money Receipt and Purchase Agreement, Scott had the right to take possession of the Real Property.

21.

Upon Default, Scott agreed to forfeit the Earnest Money as liquidated damages for failure to fulfill the Purchase Agreement, and as rent for use of the property.

22.

The closing was to take place on or before May 31, 2018.  On or about May 24, 2018, Scott refused to proceed with the closing alleging that Ihm could not make title marketable due to various tax liens and other liens or judgments against the property.

23.

In order to make title marketable prior to the closing, which was initially scheduled for May 23, and then rescheduled to May 30, 2018, CHS negotiated with the various judgment creditors as follows:

    a.   Judgment in favor of John Michael Meyers filed January 9, 2018 in the original amount of $5,860.50 was partially satisfied with a payment of $3,500.00;

b.  Judgment in favor of Dyersville Ready Mix filed March 12, 2018 in the original amount of $36,677.44 was partially satisfied with a payment of $9,169.36;

c.  Judgment in favor of Field Silo and Equipment dated March 13, 2018 in the original amount of $2,920.03 was partially satisfied with a payment of $1,500.00;

d.  Judgment in favor of IBA Fahrney, Inc. dated April 11, 2018 in the original principal amount of $5,770.73 was partially satisfied with a payment of $4,700.00; and

e.  Judgment in favor of Animart LLC dated April 11, 2018 in the original principal amount of $19,789.05 was partially satisfied with a payment of $10,000.00.

24.

Based upon information and belief, the earnest money that was held in escrow by Hennessey Auction Co. was returned to Scott.

**COUNT ONE - HELLENBRAND
DECLARATORY JUDGMENT**

25.

Plaintiff restates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

26.

Wis. Stat. § 779.50 grants a lien starting on the date of the commencement of the threshing, husking, or baling service, and permits foreclosure "at any time within 6 months from the date of the last charge for the services described."

27.

Hellenbrand's last charge for services was September 11, 2017.

28.

Pursuant to Wis. Stat. § 779.50, Hellenbrand was to foreclose on its lien within six (6) months from the last charge for services, which would have been by no later than March 11, 2018.

29.

Hellenbrand did not commence foreclosure of its lien by March 11, 2018 and therefore, its lien is now void and unenforceable.

30.

Plaintiff seeks an Order from this Court declaring Hellenbrand's lien void and unenforceable and releasing the $256,778.82 check to CHS.

### COUNT TWO - HELLENBRAND DECLARATORY JUDGMENT

31.

Plaintiff restates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

32.

Wis. Stat. §779.50 requires a lien created by that section to be recorded in the office of the register of deeds of the county where the services were performed within 15 days from the date of completion of such service.

33.

Hellenbrand's last charge for services was September 11, 2017.

34.

Pursuant to Wis. Stat. § 779.50, Hellenbrand was to record its lien within fifteen (15) days from the date of completion of service, which would have been by no later than September 26, 2017.

35.

Hellenbrand did not record its lien until on or about December 26, 2017 and therefore, its lien is now void and unenforceable.

36.

Plaintiff seeks an Order from this Court declaring Hellenbrand's lien void and unenforceable and releasing the $256,778.82 check to CHS.

**COUNT THREE**
**DEPOSIT FUNDS**

37.

Plaintiff restates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

38.

Plaintiff is currently in possession of the Check.

39.

Plaintiff is requesting permission to deposit the check with the Court until this matter is resolved. Plaintiff is also requesting that $113,204.92 be disbursed to CHS as that amount is not in controversy.[1]

---

[1] This amount is determined by subtracting the amount of the alleged Lien from the total amount of the Check ($256,778.82 – $143,573.90 = $113,204.92).

11

## COUNT FOUR - SCOTT
## DEFAULT

40.

Plaintiff restates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

41.

Scott's failure to close on the sale of the Real Property was a Default under the Earnest Money Receipt and Purchase Agreement ("Purchase Agreement"). Per the terms of the Purchase Agreement, if the buyer, Scott, failed to complete the purchase for any reason, that failure is a Default, and the seller, Ihm, is entitled to keep the Earnest Money.

42.

The Earnest Money is an "account" of Ihm of which Plaintiff has a perfected security interest in based upon the 2016 and 2017 Security Agreements UCC.

43.

The Earnest Money is proceeds from the sale of collateral, and CHS has a continued security interest in the proceeds pursuant to the UCC and Mortgages.

44.

The Earnest Money is, in part, classified as rent for use of the Real Property following the auction and prior to the closing. CHS is entitled to the Earnest Money pursuant to its Assignment of Rent included in the Mortgage.

45.

CHS is entitled to an order declaring the Earnest Money be turned over to CHS.

46.

CHS is entitled to a judgment against Scott Hellenbrands in the amount of $92,260.97.

2527135.1

WHEREFORE, Plaintiff CHS Capital, LLC seeks judgment as follows:

1. For an Order to deposit the check in the amount of $256,778.82 with the Court until this matter is resolved.

2. For an Order disbursing $113,204.92 of the $256,778.82 deposit with the Court to Plaintiff CHS Capital, LLC as that amount is not in controversy.

3. For an Order declaring Defendant Hellenbrand Farms, LLC's lien void and unenforceable and disbursing the remaining $143,573.90 to Plaintiff CHS Capital, LLC.

4. For an Order declaring CHS is entitled to the Earnest Money.

5. An award of damages against Scott Hellenbrand in the amount of $92,260.97.

6. For an award of its costs and disbursements incurred herein, including attorneys' fees; and

7. For such further and other just and equitable relief as the Court deems proper.

Dated this 27th day of September, 2018.

/s/ Brock P. Alton
Brock P. Alton  #1084892
GISLASON & HUNTER LLP
Attorneys for Plaintiff
701 Xenia Avenue South, Suite 500
Minneapolis, MN  55416
Phone:  (763) 225-6000
Fax:  (763) 225-6099
balton@gislason.com