IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHS CAPITAL, LLC,

                    Plaintiff and Counter Defendant,

                                       OPINION AND ORDER

   v.

                                       18-cv-806-wmc

HELLENBRAND FARMS, LLC, and
SCOTT HELLENBRAND

                    Defendants and Counter Claimant.

Despite defendant Hellenbrand Farms having an agricultural lien, entitling it to priority over all other liens and encumbrances under Wisconsin law, plaintiff CHS Capital, LLC, refused to endorse a joint, third-party check representing the proceeds from a crop auction and brought this lawsuit seeking a declaratory judgment that Hellenbrand Farms' lien is void and unenforceable. In response, Hellenbrand Farms counterclaimed for judgment declaring its right to approximately $143,000 in auction proceeds, as well as asserting conversion and civil theft claims against CHS based on its refusal to recognize the agricultural lien and turn over the proceeds. CHS also asserts a claim against defendant Scott Hellenbrand, claiming that he personally defaulted on a real estate sale and seeking payment of $92,000 in earnest money as liquidated damages.

The parties subsequently filed cross motions for summary judgment, which are fully briefed. (Dkt. ##26, 27.) Because this is not a close case, for reasons explained below, the court will grant defendants' motion in full and deny plaintiff's motion, enter judgment in defendants' favor on all of its counterclaims and on all of plaintiff's claims, and hold a

hearing to determine any additional remedies to which defendant Hellenbrand Farms may be entitled under its conversion and civil theft claims.

## UNDISPUTED FACTS[1]

### A. Background

Plaintiff CHS Capital, LLC, is a Minnesota limited liability company, with its principal place of business in Inver Grove Heights, Minnesota. Over the years, CHS made various loans to True Blue Holsteins, a partnership of Kevin Ihm and Gerald Ihm. As security for these loans, Gerald Ihm, Kevin Ihm, and True Blue Holsteins executed and delivered to CHS various promissory notes and agricultural security agreements, including an interest in "all crops growing, grown or to be grown . . . in 2016 and subsequent years." (Champion Aff., Ex. D (dkt. #26-2) 13, 20.) CHS perfected its security interest in the collateral as described in the security agreements by filing a UCC-1 Financing Statements with the Wisconsin Department of Financial Institutions on May 13, 2014, as filing number 140006255624. (Champion Aff., Ex. F (dkt. #26-2) 27-28.) As of July 2019, the Ihms and True Blue remain indebted to CHS under two promissory notes now totaling approximately $300,000, including interest and other fees and charges.

Defendant Hellenbrand Farms is a Wisconsin family farm and agriculture business, based in Middleton, Wisconsin, with its members consisting of spouses Ken and Jackie Hellenbrand and their sons Scott and Bruce Hellenbrand. Hellenbrand Farms cultivates

---

[1] Based on the parties' submissions at summary judgment, the court finds the following facts material and undisputed, unless otherwise noted.

land that it owns and leases. In addition, Hellenbrand Farms also performs custom harvesting for other farms, including True Blue Holsteins, for which it provided agricultural services for approximately 20 years.

More specifically, Hellenbrand Farms performed these services for True Blue Holsteins from April through September 11, 2017. After the 2017 services were completed, Hellenbrand Farms sent True Blue Holsteins an invoice in the total amount of $143,573.90. However, that invoice was not timely paid. Indeed, no amount has been paid on the invoice to date.

Shortly after sending the 2017 invoice, Hellenbrand Farms learned that True Blue Holsteins was experiencing significant financial problems. On December 26, 2017, Hellenbrand Farms then filed an agricultural lien in the amount of $143,573,90 with the Iowa County Circuit Court, Case No. 17-OL-20, under Wis. Stat. § 779.50, which provides that "[t]he lien created by this section shall be preferred to all other liens and encumbrances." (K. Hellenbrand Aff., Ex. B (dkt. #32-3).)

In early 2018, Hellenbrand Farms learned from the Hennessey Auction Company that due to ongoing financial difficulties, True Blue Holsteins wanted to sell at auction the crops subject to the agricultural lien. Hellenbrand Farms stated that the auction was acceptable, provided that its lien was paid out of the proceeds. The auction took place on February 3, 2018, and resulted in total proceeds of $256,778.82.

## B. Check from Auction Proceeds

On February 20, 2018, plaintiff CHS contacted Bill Hennessey of Hennessey Auction and instructed him to issue a check in the amount of the total proceeds to all

lienholders as joint payees, even though it had been aware of Hellenbrand Farms' lien since at least January 8, 2018. As directed by CHS, Hennessey Auction cut a check for $256,778.82, payable to CHS Capital LLC, Hellenbrand Farms LLC and the Peoples Community Bank. Also consistent with CHS's instruction, Hennessey Auction sent the check to Peoples Community Bank. CHS did not request permission from Hellenbrand Farms to have the funds disbursed in this manner.

Upon receipt, Peoples Community Bank promptly endorsed the check and sent it to CHS. While CHS received the check on February 26, 2018, it neither endorsed the check nor sent it on to Hellenbrand Farms. Rather, on February 28, 2018, CHS's attorney Jennifer Lurken called Ken Hellenbrand, asking him to sign the check so that CHS could retain the proceeds. Ken objected, explaining that the agricultural lien entitled him to first and full payment and that he would endorse the check only with that understanding.[2] Attorney Lurken refused this request, instead offering Ken $5,000.00 in satisfaction of the $143,573.90 agricultural lien.[3] After this exchange, Hellenbrand Farms retained counsel, Attorney Timothy Halbach.

On March 6, 2018, Attorney Halbach wrote a letter to CHS, pointing out that pursuant to Wis. Stat. § 779.50, the agricultural lien was "preferred to all other liens and

---

[2] For ease of reference, the court will refer to the Hellenbrands by their first names.

[3] Plaintiff objects to the admission of this statement and others under Federal Rule of Evidence 408. Rule 408 excludes evidence of a settlement offer or acceptance of that offer to compromise "the claim" or any conduct or statement made during compromise negotiations about "the claim." Fed. R. Evid. 408(a). Subsection (b), however, provides an exception for "negating a contention of undue delay," among other reasons. Accordingly, these undisputed statements attributed to Attorney Lurken as CHS's agent are admissible for purposes of considering plaintiff's assertion that Hellenbrand Farms waived its rights under the lien by failing to file for foreclosure within the six-month period under Wis. Stat. § 779.50(3).

4

encumbrances." (K. Hellenbrand Aff., Ex. C (dkt. #32-3).) On March 9, Lurken responded as follows:

> CHS objects to the Hellenbrand Lien taking priority over CHS's lien because the Hellenbrand Lien was not recorded in the office of the register of deeds where the services were performed within 15 days from the date of the completion of the service as required by Wisconsin Statute § 779.50, subd. (3). The Hellenbrand Lien on its face indicates the last services were provided on September 11, 2017 but was not filed until December 26, 2017. Therefore, the Hellenbrand Lien was not properly perfected and shall not be preferred to CHS's lien on the funds from the sale of the crop.

(Laubmeier Aff., Ex. G (dkt. #30-7).) Attorney Lurken further requested that Hellenbrand Farms contact CHS to sign the check over to CHS or "CHS will move forward with its legal rights against the Hellenbrand Lien." (*Id.*)

On March 12, Attorney Halbach responded, pointing out to Attorney Lurken that the 15-day requirement under § 779.50(3) could only be invoked by "an innocent purchaser for value," which CHS clearly was not. (K. Hellenbrand Aff., Ex. D (dkt. #32-4).) Attorney Lurken responded the next day that she had informed her client of Hellenbrand Farms' position and "should have a response by the end of the week." (Laubmeier Aff., Ex. H (dkt. #30-8).) However, Attorney Lurken did not respond that week or even within that month. Moreover, in its response to interrogatories, CHS disavowed any claim to being an "'innocent purchaser for value'" under § 779.50(3). (Laubmeier Aff., Ex. A (dkt. #30-1) ¶ 2.) CHS further acknowledged in its interrogatory responses that Hellenbrand Farms did not need "to file its Threshing Lien within fifteen (15) days of the completion of its work as to CHS." (*Id.* ¶ 3.)

Nevertheless, by mid-May 2018, CHS was still holding the check and refusing to release funds to Hellenbrand Farms. Around this time, CHS began asserting that Hellenbrand Farms was not entitled to receive the $143,573.90 amount subject to its agricultural lien because it did not file a foreclosure action within six months of the date of the last service to True Blue Holsteins -- in other words, by March 14, 2018.[4] (Laubmeier Aff., Ex. I (dkt. #30-9).) In response to Attorney Halbach pointing out that with the grain had already been sold, and that thus there was nothing to foreclose, Attorney Lurken further argued "CHS was holding onto the funds and therefore Hellenbrands should have initiated a foreclosure action against those funds on or before March 14, 2018." (*Id.*)

## C. Sale of Parcel 6

With True Blue Holsteins' financial problems continuing in the spring of 2018, True Blue and its partners decided to put several real estate parcels up for auction as well. CHS does not dispute this, but points out that True Blue's creditors, include CHS, consented to the auction of land. The real estate auction companies were Hennessey Auction and Wilkinson Auction and Realty Company, LLC. One parcel up for auction was "Parcel 6," 176.5 acres of farmland, owned by Kevin and Michelle Ihm.

---

[4] CHS points out that Attorney Lurken mentioned the six-month foreclosure period in a March 9, 2018, letter, but her letter goes on to state that the subdivision referencing the six-month foreclosure provision "only relates to foreclosure and no preference between liens." (Laubmeier Aff., Ex. G (dkt. #30-7).) Thus, Attorney Lurken did *not* argue in her letter that Hellenbrand Farms' lien is invalid because it failed to foreclose on the crops themselves within six months of the last charge for services.

The auction was held on April 20, 2018. Scott Hellenbrand submitted the highest bid at the auction for Parcel 6 in the amount of $922,609.63. On that same day, Scott signed an "Earnest Money Receipt and Purchase Agreement," which indicated that the "sale is subject to confirmation." (S. Hellenbrand Aff., Ex. A (dkt. #31-1) ¶ 9.) The agreement further states that the earnest money -- identified as 10% of the purchase price ($92,260.97) -- was "not collected as no confirmation." (*Id.* ¶ 2.)

Next, the agreement provided that the "[c]losing shall take place on or before May 31, 2018," and that the "balance of the Purchase Price shall be paid in full at the closing." (*Id.* ¶ 4.) The agreement also provided that "[p]rior to closing Seller at Seller's expense shall furnish Buyer a title commitment showing marketable title. Buyer shall take title with any and all encroachments, encumbrances, or defects in title." (*Id.* ¶ 5.)[5]

Finally, the agreement defines default and sets forth the consequences of default:

> If the sale is approved and the Buyer for any reason fails to complete the purchase, then the Buyer shall be in Default. Upon Default, Buyer shall forfeit the Earnest Money amount to the Seller as liquidated damages for failure to fulfill this Agreement and as rent for use of the property. The liquidated damages shall not constitute an election of remedies or prejudice Seller's right to pursue any and all other remedies against Buyer, including specific performance.

(*Id.* ¶ 9.)

---

[5] Paragraph 8 provides that "Buyer *may* take possession of the property after payment of the Earnest Money and execution of this Purchase Agreement." (*Id.* ¶ 8 (emphasis added).) It is undisputed, however, that Scott never stepped foot on Parcel 6 between the date of payment of the earnest money on May 10, 2018, and its return on May 24, 2018.

The agreement was signed by Scott Hellenbrand as "Buyer" and Michelle Ihm as "Seller." Kevin Ihm did not sign the agreement, nor did Michelle Ihm indicate on the agreement that she was signing it for him. CHS is not a party to the purchase agreement. The agreement includes no reference to CHS specifically nor to any creditor or lender generally.

### D. Post-Purchase Agreement Events

On April 26, 2018, Attorney Lurken sent an email to Attorney Halbach stating that CHS would approve the sale of Parcel 6 to Scott if Hellenbrand Farms would accept $40,000 as payment in full on the agricultural lien. Hellenbrand Farms declined that request.

On or about May 10, 2019, Scott Hellenbrand paid $92,260.97 in earnest money to Wilkinson Auction.[6] The purchase agreement states that the "Earnest Money shall be held in the Wilkinson Auction and Realty Co., LLC Trust Account until closing, Buyer's Default, or as otherwise agreed to in writing by Buyer and Seller." (S. Hellenbrand Aff., Ex. A (dkt. #31-10 ¶ 3.)

A closing for Parcel 6 was scheduled for May 23, 2018. Scott represents that he was ready, willing and able to close on that day. As it turned out, however, Parcel 6 was encumbered by multiple judgments, making conveying marketable title difficult. CHS

---

[6] Scott represents that an unidentified person called him to tell him to pay the earnest money but that "if he was at any point uncomfortable, he could get it back." (Defs.' PFOFs (dkt. #29) ¶ 66 (citing S. Hellenbrand Aff. (dkt. #31) ¶ 5).) To the extent offered of the truth of the matter asserted, as it certainly appears to be, the court agrees with plaintiff that this statement is inadmissible hearsay and therefore has not considered it for purposes of deciding the parties' motions for summary judgment.

does not dispute this, but represents that it was actively working with creditors and secured parties to resolve the outstanding liens against the property. CHS further maintains that it "would have been possible to convey marketable title on May 31, 2018." (Pl.'s Resp. to Defs.' PFOFs (dkt. #45-3) ¶ 58 (citing Champion Aff. (dkt. #40) ¶ 22).)

Regardless, Scott maintains that the May 23 closing was canceled on May 22 due to the inability to deliver marketable title to Scott. CHS acknowledges as much, while asserting that the closing was only "briefly postponed due to the newly discovered tax liens, which needed to be resolved." (Pl.'s Resp. to Defs.' PFOFs (dkt. #45-3) ¶ 71.) There is no dispute that on May 24, 2018, Attorney Lurken wrote to Attorney Halbach that CHS was

> recently informed that the IRS has filed an additional lien for approximately $50,000.00 that attaches to Parcel 6. As I mentioned with all of the debt against Parcel 6, it is unclear whether the sale price will be enough to transfer clear title to your client. As such, we need to get this resolved as soon as possible to held reduce the amount of debt against Parcel 6 as [we] move closer to closing the sale.

(Champion Aff., Ex. D (dkt. #40-4).) There is also no dispute that the "this" Attorney Lurken was referencing in the last sentence of her latter was the agricultural lien dispute.

Because defendants remained uninterested in compromising Hellenbrand Farms' agricultural lien by over $100,000 -- accepting the $40,000 offered in April to settle its lien of over $143,000 -- Scott requested the return of his earnest money. Scott represents that neither Kevin or Michelle Ihm, nor CHS, objected to the return of his earnest money. Moreover, in a check dated May 24, 2018, Wilkinson Auction returned the earnest money

to Scott, and he deposited the funds on May 30, 2018. Thus, Scott assumed that the return of the earnest money meant the end of the purchase agreement.

On or before May 30, 2018, CHS was made aware that Scott was no longer going to purchase Parcel 6. Also, on or before May 30, CHS was aware that there was a new buyer for Parcel 6, who had agreed to pay approximately $17,000 *more* for Parcel 6 than Scott had agreed to pay. The sale to the new buyer closed on July 11, 2018, at which time CHS's mortgages on Parcel 6 were satisfied.

At no time before May 31 did CHS inform Scott that it objected to the return of his earnest money or that it believed he was in breach or default of the original purchase agreement. Indeed, CHS never maintained Scott was liable to CHS for the earnest money until it filed this lawsuit on September 27, 2018.

## OPINION

Invoking this court's jurisdiction under 28 U.S.C. § 1332(a), plaintiff CHS seeks a declaratory judgment: (1) against defendant Hellenbrand Farms that its lien is now void and unenforceable because it did not commence a foreclosure action on or before March 11, 2018; and (2) against defendant Scott Hellenbrand that he is in default on the purchase agreement, entitling CHS to payment of the $92,260.97 in earnest money.[7] Defendants answered the complaint and asserted counterclaims, which seek a declaratory judgment that Hellenbrand Farms is entitled to $143,573.90 from the auction proceeds check, as

---

[7] The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Plaintiff is a citizen of Minnesota; defendants are both citizens of Wisconsin. (Am. Compl. (dkt. #4) ¶¶ 1,4.) The amount in controversy exceeds $75,000.

well as further relief based on plaintiff's conversion and civil theft under Wis. Stat. §§ 895.446(1) and 943.20(1)(b).

As a preliminary matter, plaintiff had originally sought a declaratory judgment that Hellenbrand Farms' agricultural lien is void and unenforceable because it was not recorded within 15 days from the last date of service.[8] As detailed above, however, plaintiff's responses to interrogatories indicate that plaintiff has withdrawn this argument. Curiously, plaintiff still argues in its brief that it had a "valid argument for not handing over the Joint Check," but it is "choosing to not pursue that argument because the failure to foreclose is a stronger argument at this point in time." (Pl.'s Opp'n (dkt. #37) 12.) Regardless, from the court's review of the plain language of Wis. Stat. § 779.50, CHS's position in March 2018 was *not* valid.

As defendant's counsel explained to CHS at that time, Section 779.50 provides:

> The lien created by this section shall be preferred to all other liens and encumbrances, but does not apply to *an innocent purchaser* for value unless such lien is recorded in the office of the register of deeds of the county where the services were performed within 15 days from the date of the completion of such service.

Wis. Stat. § 779.50(3) (emphasis added). Moreover, there is *no* dispute that CHS was aware of Hellenbrand Farms' § 779.50 lien since at least January 8, 2018, almost a month before the auction. Finally, there is *no* basis for finding that CHS is an "innocent purchaser," a fact CHS essentially acknowledged in its interrogatory responses. (Laubmeier Aff., Ex. A (dkt. #30-1) ¶ 2.)

---

[8] In its complaint, plaintiff also sought permission to deposit the check into the court's escrow account, which the court addressed in a prior order. (2/13/19 Order (dkt. #18).)

Even if some "valid argument" for CHS not honoring defendant Hellenbrand Farms valid, superior lien existed, as counsel for CHS mysteriously suggests in briefing, Hellenbrand Farms moved for summary judgment on its own declaratory claim, meaning CHS was required to come forth with all possible defenses. Having asserted none, CHS has articulated no justification for its failure to turn over the proceeds of the auction owed to Hellenbrand Farms because of its agricultural lien, other than perhaps its totally discredited assertion that a 15-day recording requirement applied here or that Hellenbrand Farms failed to foreclose timely on its lien as discredited below. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (internal citation and quotation marks omitted)).

Moving on to the principal issues in the parties' cross-motions for summary judgment, the court will first address the parties' dispute concerning the auction proceeds check, and then turn to CHS's claim against defendant Scott Hellenbrand for a finding of default and damages in the amount of his earnest money payment.

## I. Dispute over Auction Check

### A. Declaratory Judgment Actions

As described above, under Wisconsin Statute § 779.50, a person who provides threshing, husking or bailing services, among other agricultural activities, "shall have a lien upon the grain, corn, hay or straw for the value of the services." Wis. Stat. § 779.50(1)(a).

That lien "shall be preferred to all other liens and encumbrances," with the exception of an innocent purchaser described above. Wis. Stat. § 779.50(3).

Material to CHS's argument, the statute also provides that

> The lien given under par. (a) may be foreclosed at any time within 6 months from the date of the last charge for the services described in par. (a) as long as the charges remain unpaid. For the purpose of foreclosing the lien, the lien claimant may take possession of so much of the grain, corn, hay or straw as shall be necessary to pay for the services and the expenses of enforcing the lien, for the services, and sell the grain, corn, hay or straw at public auction. The auction shall be held upon notice of not less than 10 nor more than 15 days from the date of the seizure of the grain, corn, hay or straw under this paragraph.

Wis. Stat. § 779.50(1)(b).

As previously noted, CHS now contends that Hellenbrand Farms' lien is void and unenforceable because it failed to foreclose on the lien within six months of the date of the last charge. Specifically, CHS argues that Section 779.50(1)(b) "clearly states a lien under the section must be foreclosed upon within six months of the date of the last charge for the services. If the holder of the lien does not foreclose, the holder loses the secured portion of the lien." (Pl.'s Opening Br. (dkt. #35) 7.)

Contrary to CHS's dogged argument, however, the statute does *not* state that an agricultural lien is extinguished or terminated if the lienholder chooses not to foreclose within six months of the date of the last charge. Far from it, § 779.50 simply states that the lienholder "may" seek foreclosure; in contrast, the statute states that a person providing agricultural services, like defendants provided True Blue Holsteins here, "*shall* have a lien," and that this lien "*shall* be preferred to all other liens and encumbrances." Wis. Stat.

§ 779.50(1)(a), (3) (emphasis added).  *See Rotfeld v. Wis. Dep't of Nat. Res.*, 147 Wis. 2d 720, 726–27, 434 N.W.2d 617, 620 (Ct. App. 1988) ("The general rule is that the word 'shall' is presumed mandatory when it appears in a statute.  The word 'may' is generally construed as allowing discretion.  In addition, [w]hen the words 'shall' and 'may' are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." (internal citations and quotation marks omitted)).  Moreover, if a lienholder opts to foreclose, then the statute provides that certain notice "*shall* be given."  Wis. Stat. § 779.50(2).  The statute, however, provides that the lien "*may* be foreclosed at any times within 6 months from the date of the last charge for services," Wis. Stat. § 779.50(1)(b), but does not state that the lien *must* be foreclosed during this period or be subject to termination.  The court agrees with defendant that the foreclosure scheme is a permissive action under the statute but not mandatory.

As defendants points out in their submissions, when the Wisconsin Legislature intends to terminate a lien for failing to exercise certain rights, the statute says so.  For example, Wisconsin Statute § 779.20(1), which describes an action for enforcing a log lien, states, "[t]his claim shall cease to be a lien unless an action to foreclose is commenced within 4 months after filing the petition."  Similarly, under Wisconsin Statute § 779.06(1), involving a construction lien, "[n]o lien under s. 779.01 shall exist . . . unless within 2 years from the date of filing a claim for lien an action is brought and summons and complaint filed."  *See also* Wis. Stat. § 779.036(3) (describing lien for contracts with payment bond, "[i]f the action is not brought within 3 months from the time the notice required by sub.

(1) is served, the lien rights under this section are barred"); Wis. Stat. § 779.15(3) (providing lien for public improvements and stating, "[i]f the action is not brought within 3 months from the time the notice required by sub. (1) is served, and notice of bringing the action filed with the officer with whom the claim is filed, the lien rights are barred").

These examples of statutory language mandating certain actions to maintain a lien stands in stark contrast to the language at issue in § 779.50, which provides for a permissive foreclosure process and does not state that the lien is terminated or somehow extinguished if the lienholder fails to take such steps. CHS also cites to a Minnesota Supreme Court case concerning Minnesota's agricultural lien provision, which it describes as "nearly [an] identical version of Wisconsin's thrasher's lien statute." (Pl.'s Opening Br. (35) 7.) In *Ehmke v. Hartzell*, 199 N.W. 748 (Minn. 1924), the court held that the lien ceased to exist because "it was not enforced in the specified manner and within the specified time." *Id.* at 748. However, the language in that statute and the holding in *Ehmke* actually cuts the other way since it provided that a seizure of the grain covered by the lien "*must* be made, or an action to foreclose be commenced, within six months after such filing." *Id.* (emphasis added). As such, *Ehmke*, and the statute considered by the court in it, is distinguishable from the statutory language at issue here in the most fundamental way possible: the Minnesota statute mandates action, while § 779.50(1)(b) is permissive.

Even if foreclosure were a required action under the statute in order to maintain agricultural lien rights, plaintiff's argument fails for a second, independent reason. Here, the crops that could have been subject to a foreclosure action were in fact sold at public auction, as agreed to by Hellenbrand Farms for payment of its lien, during the six month

period of time from the date of Hellenbrand Farms' last service. As such, there was no crop on which to foreclose. The express language of Section 779.50 contemplates "foreclosure" as seizure and sale of the crops subject to the agricultural lien: "[f]or the purpose of foreclosing the lien, the lien claimant may take possession of so much of the grain, corn, hay or straw as shall be necessary to pay for the services and expenses of enforcing the lien, for the services, and sell the grain, corn hay or straw at public auction." Wis. Stat. § 779.50 (1)(b). Since the debtor here had already *volunteered* to auction off the crop and relinquish the proceeds over to creditors, including defendant Hellenbrand Farms, a foreclosure action would not only have been a needless expense, it would have delayed an orderly sale contemplated by § 779.50, which is exactly what took place on February 3, 2018.

Ignoring this plain language, plaintiff nonetheless argues that Hellenbrand Farms should have foreclosed on the check itself, reasoning that the check from the auction constituted collateral, and that Wis. Stat. § 409.315 provides that an agricultural lien "continues in collateral." (Pl.'s Opening Br. (dkt. #35) 8-9.) However, plaintiff stops short of providing *any* support for its position that an agricultural lienholder could initiate a foreclosure proceeding against a check held by a third-party, which is hardly surprising.

Plaintiff further argues that "[a] foreclosure is an action which addresses the legal rights of those entitled to possession or other rights in the collateral, including, typically, the rights of other lienholders." (Pl.'s Opening Br. (dkt. #35) 6 (citing *First Wis. Trust Co. v. Rosen*, 422 N.W.2d 128, 130 (Wis. 1988)).) However, a foreclosure action is not the *only* method for determining priority of rights, and plaintiff offers no basis in the statute

or case law for finding that defendant Hellenbrand Farms was required to initiate a foreclosure action to enforce its priority position under an agricultural lien on the proceeds of a crop sale, especially where the the plain language of the statute establishes its priority over other liens and encumbrances, including the security interest held by CHS.[9]

For at least these two reasons, therefore, the court will grant summary judgment in defendant Hellenbrand Farms' favor on its crossclaim for declaratory judgment and against plaintiff's declaratory judgment claims. In light of this finding, the court will further direct the clerk's office to release to defendant Hellenbrand Farms the $143,573.90 previously deposited into the court's escrow account, along with any interest that has accrued on that deposit.

### B. Conversion and Civil Theft Counterclaims

This leaves Hellenbrand Farms' conversion and civil theft counterclaims. Under Wisconsin law, the elements of conversion are "(1) intentional control or taking of property belonging to another; (2) without the owner's consent; (3) resulting in serious interference with the rights of the owner to possess the property." *H.A. Friend & Co. v. Prof'l Stationary, Inc.*, 2006 WI App 141, ¶ 11, 294 Wis. 2d 754, 720 N.W.2d 96. Similarly, under Wis. Stat. § 943.20, theft is defined as one who "[i]ntentionally takes and

---

[9] The parties also purport to dispute whether the "charges remain unpaid." Wis. Stat. § 779.50(1)(b) (permitting foreclosure proceedings within the six month period "as long as the charges remain unpaid"). However, whether the issuance of the check constitutes payment is a technical argument that the court need not reach, other than to note again that issuance of a check from the sale of crops that could have been the subject of the foreclosure action appears to eliminate a foreclosure action as a possible avenue for satisfaction of the lien, and plaintiff should hardly be rewarded for preventing the cashing of the check for the benefit of the rightful creditors.

carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property." *See also* Wis. Stat. § 895.446(1) (providing right to civil action for anyone who suffers damage or loss under § 943.20, among other statutes).

Plaintiff's opposition to summary judgment on these two claims is largely a regurgitation of the arguments it made in support of its now rejected claim for a declaratory judgment. Generally, plaintiff argues that "[u]pon the expiration of the Threshing Lien, all claims arising out of the Threshing Lien, including any claims for conversion or civil theft, similarly expire." (Pl.'s Reply (dkt. #53) 7.) Having rejected its argument that the lien expired or ceased to exist, the court similarly rejects plaintiff's defense to the conversion and civil theft claims.

Specific to these claims, plaintiff also argues that it "retained possession of the Check not to deprive Hellenbrand Farms of its property, but to safeguard its own lien rights while there remained a dispute between creditors regarding priority." (Pl.'s Opp'n (dkt. #37) 16-17.) However, the court has now determined that plaintiff's arguments were based on a flawed -- bordering on frivolous -- reading of Wis. Stat. § 779.50. Moreover, CHS wholly refused *at its own risk* to recognize Hellenbrand Farms' prior lien and turn over the portion of the proceeds from the auction to Hellenbrand Farms given its superior interest. Instead, as detailed above, CHS repeatedly attempted to low ball Hellenbrand Farms into releasing its agricultural lien, initially offering only $5,000 and eventually increasing the offer to $40,000, which still fell $100,000 short of what was owed to Hellenbrand Farms was entitled to under its lien.

This undisputed record demonstrates that CHS's refusal to turn over $143,573.90 from the proceeds of the crop sale to satisfy Hellenbrand Farms' priority agricultural lien meets the elements of conversion and civil theft. The court, therefore, will also enter judgment in Hellenbrand Farms' favor on these claims. As detailed in defendants' brief, Hellenbrand Farms is entitled to interest at 5.0% under Wis. Stat. § 138.04 from the date of plaintiff's wrongful conversion of the check on February 26, 2018. Hellenbrand Farms' civil theft claim also entitles it to recover "[a]ll costs of investigation and litigation that were reasonably incurred, including the value of the time spent by any employee or agent of the victim" and "[e]xemplary damages of not more than three times" its actual damages. Wis. Stat. § 895.446. On the date reserved for a trial, therefore, the court will hold a hearing on the appropriateness of these equitable remedies.

## II. Claim Against Scott Hellenbrand

Finally, defendant Scott Hellenbrand seeks summary judgment on plaintiff CHS's claim that he is in default under the purchase agreement, therefore, entitling CHS to his now refunded, $92,260.97 earnest money payment. In support of his motion for summary judgment on this claim, Scott argues that: (1) the purchase agreement is not a valid contract for the sale of real estate; (2) CHS has no standing to enforce the purchase agreement; and (3) any ability to sue Scott Hellenbrand for earnest money has been waived. Because the court finds that the first of these three argument warrants summary judgment in Scott's favor, the court need not address the other two seemingly meritorious arguments further.

Under Wisconsin law, a contract to sell real estate "shall not be valid" unless it is "signed by or on behalf of all parties." Wis. Stat. § 706.02(1)(e). As described above, Parcel 6 was owned by Kevin and Michelle Ihm. The agreement, however, was only signed by Michelle Ihm, as shown below:



(S. Hellenbrand Aff., Ex. A (dkt. #31-1).) Plaintiff contends that Michelle Ihm was also signing on behalf of her husband Kevin Ihm, given that he was very ill the day of the auction of Parcel 6. From this, plaintiff argues that "Michelle Ihm's signature, under these circumstances, is sufficient to bind Kevin Ihm." (Pl.'s Opp'n (dkt. #37) 18.)

As Scott points out that, however, Michelle Ihm did *not* indicate that she was signing on behalf of Kevin Ihm anywhere on the purchase agreement. This is material since Wisconsin Statute § 706.03(1m) provides in pertinent part:

> A conveyance signed by one purporting to act as agent for another shall be ineffective as against the purported principal unless such agent was expressly authorized, and unless the authorizing principal is identified as such in the conveyance or in the form of signature or acknowledgment.

Here, contrary to the express requirements of § 706.03, there is nothing in the signature block or otherwise to indicate that Michelle Ihm was signing for her husband.

For this reason alone, the facts at issue in this case are on all fours with the those before the Wisconsin Supreme Court in *Glinski v. Sheldon*, 88 Wis. 2d 509, 276 N.W.2d 815 (1979), which rejected the buyers' argument that a real estate purchase agreement was enforceable where only signed by the husband of a selling couple, the Sheldons, "acting as the agent of his wife when he affixed his signature in acceptance of the Glinskis' offer to purchase." *Id.* at 516, 276 N.W.2d at 819. The court explained,

> A thorough reading of sec. 706.03 resolves the issue of an agency relationship existing between the Sheldons. Sec. 706.03 by its clear wording sets forth two distinct requirements: (1) an express authorization of agency; [a]nd (2) the authorizing principal is identified as such in the conveyance or in the form of signature or acknowledgment. Inspection of the seller's acceptance on the offer to purchase does not reflect that Richard S. Sheldon was acting for or on behalf of his wife and only acted as "Richard S. Sheldon (Seller.)" Therefore, the requirements of sec. 706.02(1)(f) are not fulfilled in the absence of the showing of the agency relationship in this contract.

*Id.* at 517, 276 N.W.2d at 819; *see also Nelson v. Albrechtson*, 93 Wis. 2d 552, 562, 287 N.W.2d 811, 817 (1980) (upholding challenge to non-homestead purchase agreement signed by only one spouse, explaining that under Wis. Stat. § 703.03(1), "a written agreement signed by one purporting to act as agent for another is ineffective to convey an interest in property without the express authorization and identification of the principal").

Despite the facts appearing to follow on all fours with *Glinski*, plaintiff argues there somehow remain fact issues that preclude summary judgment in defendant's favor on this claim. To the contrary, given the undisputed record -- namely, that Michelle Ihm was the only "seller" identified on the purchase agreement despite the property being owned by the Ihms in common -- and the express statutory requirements under Wisconsin Statute

§ 706.03(1m) for an express authorization of agency *and* identification of the authorizing principal as such, the court can find *no* material dispute of fact that would preclude entry of judgment in defendant's favor. Accordingly, the court will also grant judgment in defendant Scott Hellenbrand's favor on plaintiff's claim for a finding that he was in default under the purchase agreement.

ORDER

IT IS ORDERED that:

1) Plaintiff CHS Capital LLC's motion for partial summary judgment (dkt. #26) is DENIED.

2) Defendants Hellenbrand Farms, LLC, and Scott Hellenbrand's motion for summary judgment (dkt. #27) is GRANTED. The court declares that defendant Hellenbrand Farms, LLC is entitled to $143,573.90 from the auction proceeds and further finds that plaintiff CHS Capital, LLC, is liable for conversion and civil theft. Finally, judgment shall also be entered in favor of defendant Scott Hellenbrand on CHS Capital, LLC's remaining claim for default and payment of earnest money.

3) The clerk of court is directed to release the full amount of the funds held in escrow with the court to Hellenbrand Farms, LLC. Counsel for defendants should contact the clerk's office to arrange for release of those funds by providing the name of the payee and an address.

4) The remainder of the pretrial schedule is STRUCK. The clerk's office is directed to convert the trial scheduled for November 12, 2019, to a hearing on defendants' rights to further equitable remedies for its conversion and civil theft counterclaims, if any.

Entered this 9th day of October, 2019.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge